Electronically Filed - Jackson - Kansas City - June 02, 2017 - 08:11 PM

## IN THE 16ᵀᴴ JUDICIAL CIRCUIT COURT OF JACKSON COUNTY, MISSOURI AT KANSAS CITY

| | |
|---|---|
| **RYAN M. WILLIAMS, individually and on behalf of all others similarly situated,** | |
| *Plaintiff,* | **Case No.:** |
| **vs.** | **Division:** |
| **GATHERAPP, INC.,**<br>**Serve at:**<br>    **Cogency Global, Inc.**<br>    **850 New Burton Road, Suite 201**<br>    **Dover, Delaware 19904** | **JURY TRIAL DEMANDED** |
| *Defendant.* | |

## CLASS ACTION PETITION FOR DAMAGES {X1}

Plaintiff Ryan M. Williams, individually and on behalf of all others similarly situated, brings this action against Defendant GatherApp, Inc. ("GatherApp") to secure redress for GatherApp's practice of:

    (1)    sending text messages to cellular telephone numbers in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227, *et seq.*;

    (2)    sending telemarketing and/or advertising text messages to individuals registered on the national do-not-call ("DNC") registry, in violation of the TCPA, 47 U.S.C. §§ 227, *et seq.*; and

    (3)    sending telephone solicitations to Missouri residents registered on the national do-not-call registry or the Missouri do-not-call ("Mo. DNC") registry, in violation of the Missouri Merchandising Practices Act ("MMPA"), RSMo §§ 407.1095, *et seq.*

Plaintiff, for his class action petition, alleges as follows based upon personal knowledge as to himself and his own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by counsel:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff is a resident of Jackson County, Missouri.

2. Defendant GatherApp, Inc. is a Delaware corporation with a principal place of business outside of Missouri.

3. Defendant GatherApp conducts business throughout the United States and maintains a registered agent at Cogency Global, Inc., 850 New Burton Road, Suite 201, Dover, Delaware 19904.

4. Pursuant to RSMo § 506.500, jurisdiction is proper in this Court because Defendant has transacted business in Jackson County, Missouri and/or because the tortious acts complained of in this Petition occurred in Jackson County, Missouri.

5. Pursuant to RSMo § 508.010, venue is proper in this Court because the tortious acts complained of herein arose and took place within Jackson County, Missouri, the transactions at issue or some part of the transactions took place within Jackson County, Missouri, and/or Plaintiff was first injured Jackson County, Missouri.

6. Further, jurisdiction and venue are proper pursuant to 47 U.S.C. § 227(b)(3), which grants state courts jurisdiction over actions alleging violations of 47 U.S.C § 227.

7. On information and belief, GatherApp has sent the same or similar text messages complained of by Plaintiff to others within Jackson County, Missouri, such that a substantial portion of the events giving rise to this cause of action occurred here.

8. In addition, GatherApp also transacts significant amounts of business within Jackson County, Missouri, directs telephone calls and text messages here, solicits customers here, and enters into consumer and business contracts here, thereby subjecting it to the jurisdiction of this Court.

2

## NATURE OF THE ACTION

9.  Defendant GatherApp operates a social networking service called Gather. In an effort to quickly gain more users for its mobile application, GatherApp secretly collected the telephone numbers stored on its existing users' cell phones, and then sent text message[1] advertisements to those contacts urging them to download its mobile application. This marketing technique is commonly known as "spam-viting" or "growth hacking," and is sometimes used by mobile app developers (such as GatherApp) to gain a larger user base for the purpose of inflating their valuation and attracting investors.

10. On information and belief, throughout its campaign, GatherApp has sent tens of thousands of spam text messages to consumers without their prior express consent, all in violation of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq*., (the "TCPA").

11. Plaintiff and the putative Class members (as defined herein), never provided their cell phone numbers to GatherApp and never provided GatherApp with prior express consent in writing, or otherwise, to send them text messages of any kind, let alone unsolicited spam advertising messages to their personal cell phones.

12. By sending the text messages at issue, GatherApp has violated the privacy rights and the statutory rights of Plaintiff and the Class members, and caused them to suffer harm, including annoyance and inconvenience, as well as financial expenses associated with the receipt of Defendant's unauthorized text messages.

13. In response to GatherApp's unlawful conduct, Plaintiff brings the instant lawsuit seeking an injunction requiring GatherApp to cease all unsolicited text message activities and an award of statutory damages to Plaintiff and members of the putative class under the TCPA.

---

[1]  For purposes of this Petition, the term "text message" includes short messaging service ("SMS") messages containing only text, as well as multimedia messaging service ("MMS") messages containing media other than text.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991
### 47 U.S.C. §§ 227, *et seq.*

14.     Advancements in telephone dialing technology since the 1980s and 90s have made reaching a large number of consumers by telephone easier and more cost-effective. However, this technology has also brought with it an onslaught of unsolicited robocalls, spam text messages, and junk faxes that intrude on individual privacy and waste consumer time and money.

15.     Senator Hollings, sponsor of the TCPA, described robocalls as "the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30, 821 (1990).

16.     The Federal Trade Commission ("FTC") reported that "robocall complaints had peaked at more than 200,000 per month" by the fourth quarter of 2012. *In the Matter of Rules and Regulations Implementing the TCPA of 1991*, FCC Declaratory Ruling and Order, CG Dkt. No. 02-278, ¶ 5 (July 10, 2015) ("2015 TCPA Order") (citations omitted). The Federal Communications Commission ("FCC") received more than 215,000 TCPA complaints in 2014. *Id*. Statement of FCC Chairman Tom Wheeler, p. 106.

17.     In response to these unwanted telephone calls, text messages, and junk faxes, the federal government and numerous states have enacted legislation to combat these widespread telemarketing abuses. As Congress recognized:

> Many customers are outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers.... Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy

4

invasion.

Pub. L. No. 102-243 § 2(6, 12) (1991), *codified at* 47 U.S.C. § 227.

18.    As is relevant here, the TCPA prohibits "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service[.]" 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1).

19.    For purposes of the TCPA, "[a] text message to a cellular telephone … qualif[ies] as a 'call' within the compass of § 227(b)(1)(A)(iii)." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667 (2016) (citation omitted).[2]

20.    "Automatic telephone dialing system" ("ATDS") refers to any equipment that has the "capacity to dial numbers without human intervention[,]" such as predictive dialers. *Griffith v. Consumer Portfolio Serv., Inc.*, 838 F. Supp. 2d 723, 726 (N.D. Ill. 2011) (*citing In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd 14014, 14092, ¶ 132 (2003) ("2003 TCPA Order")).

21.    In 2012, the FCC – the agency tasked with promulgating the implementing regulations of the TCPA – revised its TCPA rules to require *prior express written consent* before initiating a telephone call "that includes or introduces an advertisement or constitutes telemarketing[.]" 47 C.F.R. § 64.1200(a)(2); *In re Joint Petition filed by Dish Network, LLC*, 28 FCC Rcd. 6574 (2013).

22.    According to FCC regulations, "*prior express consent*" must (i) be in writing; (ii) be signed by the person providing the consent; (iii) specify the telephone number to which the

---

[2]    *See also In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Order, GC Dkt. No. 02-278, ¶ 3 (Nov. 15, 2016) (the TCPA's prohibition on robocalls "encompasses both voice and text calls, including short message service (SMS) calls and text calls …").

person is consenting to be called; and (iv) clearly authorize the calling party to use an ATDS or artificial or pre-recorded voice. *See In the Matter of Rules and Regulations Implementing the TCPA of 1991*, FCC Report and Order, CG Dkt. No. 02-278, ¶ 33 (Feb. 15, 2012) ("2012 TCPA Order").

23.　　The TCPA provides for injunctive relief and the greater of actual damages or $500 per violation, which may be trebled where defendant's conduct was done willfully or knowingly. 47 U.S.C. §§ 227(b)(3) and (c)(5).

24.　　In 2003, the FCC adopted a national DNC registry, to provide consumers with an option to prohibit unwanted telemarketing solicitations. *2003 TCPA Order* at ¶ 28.

25.　　The FCC rules also prohibit any person or entity from initiating a telemarketing solicitation to any "residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2). For purposes of this provision of the TCPA, wireless subscribers who are registered with the national DNC are presumed to be "residential subscribers." *2003 TCPA Order* at ¶ 36.

26.　　The FCC's regulations define "advertisement" as "any material advertising the commercial availability … of any property, goods, or services." 47 C.F.R. § 64.1200(f)(1). Whether a call is an "advertisement" depends on the content of the telephone solicitation. *Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

27.　　"Telemarketing" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase … of … goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12). The "telemarketing" inquiry focuses on the purpose of the telephone solicitation, rather than its content. *Golan*, 788 F.3d at 820.

Electronically Filed - Jackson - Kansas City - June 02, 2017 - 08:11 PM

28.     The FCC has also made rulings regarding the TCPA's vicarious liability standards as it relates to telemarketing. As early as 1995, the FCC stated that "[c]alls placed by an agent of the telemarketer are treated as if the telemarketer itself placed the call." *In re Rules and Regulations Implementing the TCPA of 1991*, 10 FCC Rcd. 12391, 12397 (1995).

29.     The FCC has also clarified that vicarious liability is imposed under federal common law principles of agency for violations of either sections 227(b) or (c) that are committed by third-party telemarketers. *Dish Network Ruling* at ¶ 18.

30.     The TCPA provides for injunctive relief and the greater of actual damages or $500 per violation, which can be trebled where the statute was "willfully or knowingly" violated. 47 U.S.C. §§ 227(b)(3) and (c)(5).

31.     For purposes of the MMPA, a "telephone solicitation" includes messages sent via short messaging service, i.e., text messages, or multimedia messaging service, i.e., MMS messages, "for the purpose of encouraging the purchase of, or investment in, property, goods or services … " RSMo § 407.1095(3).

32.     The MMPA prohibits any person or entity from making or causing to be made "any telephone solicitation to any residential subscriber in [the state of Missouri]" who has registered his or her number on the Mo. DNC registry. For purposes of the MPA, the term "residential subscriber" includes residential and wireless telephone numbers.

33.     The MMPA provides that the numbers of national DNC registrants that relate to the state of Missouri shall be included in the Mo. DNC registry. RSMo § 407.1095.3.

34.     The MMPA provides for injunctive relief and recovery of actual damages or up to $5,000 per knowing violation. RSMo § 407.1107.3(1) – (3).

<u>**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**</u>

35.     Given the low cost associated with sending bulk text messages, many marketers and mobile app developers (such as GatherApp) have turned to mass text message campaigns to market their products.

36.     Seeking to market its Gather mobile application to consumers and, in turn, grow its user base, GatherApp chose to engage in this extremely invasive form of advertising.

37.     In order to carry out its campaign, GatherApp secretly downloaded telephone numbers of its existing users' contacts, and then spammed such contacts with promotional text messages, urging them to download its mobile application.

38.     Each promotional text message call sent by GatherApp was substantially similar in that they contain a hyperlink to GatherApp's website, encouraging recipients to download the Gather mobile application.

39.     On many occasions, including the text messages sent to Plaintiff, GatherApp sent a second message containing a GIF (Graphics Interchange Format) Image, i.e., a short video segment compressed into image format, or similar media. (See the below image, showing the two text messages GatherApp sent to Plaintiff's cellular telephone).



40.     If a consumer clicks on the hyperlink displayed in the promotional text message call, the effect of GatherApp's text message marketing campaign becomes apparent. That is, after clicking that hyperlink, the recipient of GatherApp's promotional text message is directed to GatherApp's website, which contains additional links to download the Gather mobile application on the Apple AppStore or on Google Play (the Android Marketplace).

41.     GatherApp made, and continues to make, these unauthorized text message calls to consumers so that it can solicit them to download its mobile application. Within the four years preceding the filing of this action, GatherApp and/or its agents utilized an ATDS to send the same (or substantially the same) promotional text message calls *en masse* to thousands of cellular or wireless telephone numbers, including those of Plaintiff and the putative class members.

42.     Specifically, the hardware and software used by GatherApp and/or its agents has the capacity to generate and store random numbers, or store lists of telephone numbers, and to dial those numbers, *en masse*, in an automated fashion without human intervention.

43.     On information and belief, the equipment employed by GatherApp not only has the capacity to store or produce telephone numbers to be called using a random or sequential number generator (and to dial such numbers), but was programmed to sequentially or randomly access stored telephone numbers to automatically connect a telephone with an automated message.

44.     GatherApp's text messages are sent with equipment capable of dialing numbers without human intervention.

45.     GatherApp's messages are unattended by human beings, and are sent automatically to the telephone numbers it secretly collects from users' cell phones.

46.     Plaintiff and the putative class never provided prior express consent in writing, or

otherwise, for GatherApp to send autodialed spam text messages.

47.     GatherApp sent these text messages to Plaintiff and other putative class members who have their telephone numbers registered with the national DNC registry and the Mo. DNC registry.

48.     On information and belief, GatherApp sent many of these individuals more than one text message, including Plaintiff, and GatherApp lacks an adequate system for preventing the transmission of numerous automated text messages to the same telephone number.

49.     GatherApp is aware that the above-described text messages are being sent to consumers without their prior express consent, but GatherApp continues to send them anyways.

50.     Plaintiff and the putative class have been substantially damaged by GatherApp's calls[3] – their privacy was improperly invaded; the text messages intruded upon their seclusion; they were annoyed and inconvenienced; the repeated text messages interfered with the exclusive use of their property; they were charged out of pocket cellular airtime minutes for these text messages; they were charged cellular data for services related to the text messages and website links, *see Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637 (7th Cir. 2012) (stating that unwanted cell phone robocall recipients are damaged because they are charged "out of pocket"

---

[3]     *See Van Patten v. Vertical Fitness Group, LLC*, No. 14-55980 (9th Cir. Jan. 30, 2017) (allegations of "[u]nsolicited phone calls or text messages … invade the privacy and disturb the solitude of their recipients" and are sufficient to confer Article III standing); *Williams v. zZounds Music, L.L.C.*, No. 16-cv-940 (W.D. Mo. Feb. 28, 2017) (complaints of autodialed calls to Plaintiff's cell phone sufficiently allege a "concrete injury" that is "fairly traceable to the challenged conduct of the defendant") (*citing Van Patten*); *Hunsinger v. Gordmans, Inc.*, No. 16-cv-162 (E.D. Mo. Dec. 5, 2016) (complaints of text messages to Plaintiff's cell phone sufficiently alleged an "injury in fact" that was fairly traceable to the defendant's conduct); *Ung v. Univ. Acceptance Corp.*, No. 15-cv-127 (D. Mn. Aug. 3, 2016) ("the receipt of unwanted phone calls constitutes a concrete injury sufficient to create standing under the TCPA"); *Caudill v. Wells Fargo Home Mtg., Inc.*, 16-cv-66, 2016 WL 3820195, 15 *2 (E.D. Ky. July 11, 2016) (phone calls cause harms "such as the invasion of privacy [that] have traditionally been regarded as providing a basis for a lawsuit in the United States"); *Mey v. Got Warranty, Inc.*, 193 F. Supp. 3d 641, 649 (N.D. W. Va. 2016) (collecting cases).

cellular airtime minutes);[4] the ATDS calls intruded upon the use and occupied the capacity of Plaintiff' and the Class members' cellular phones, depleted and/or reduced the lifespan of their cellular phone batteries,[5] and caused Plaintiff and the Class members to incur the additional costs of electricity to recharge their phones;[6] and, on information and belief, GatherApp's repeated text messages have caused unwanted use, damage and/or depletion of their property, including, but not limited to, a reduction in the lifespan of their speakers, vibration motors, LCD screens, and other hardware and/or electronic components.

### FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF

51. At all times relevant hereto, Plaintiff has paid a third-party provider for cellular telephone service and cellular data service on his personal cellular telephone, ending in "6636".

52. Plaintiff has never downloaded or used the Gather mobile application, never had an account with GatherApp, never gave his phone number to GatherApp, and never provided express consent to GatherApp in writing, or otherwise, for GatherApp to send autodialed promotional text messages to his cellular telephone number.

53. On or about May 7, 2017, Plaintiff received two unsolicited spam text messages

---

[4] *See also In re Rules Implementing the Tel. Consumer Prot. Act of* 1991, 23 FCC Rsd. 559, 562 (F.C.C. 2007) ("wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used."); *Warnick v. Dish Network LLC*, No. 12-cv-01952 (D. CO Sep. 30, 2014) ("users of cellular telephone numbers *are indeed charged* for incoming calls, regardless of whether they incur any *additional* charges for such calls."); *Markovic v. Appriss, Inc*., No. 13-cv-1439 (S.D. IN Dec. 31, 2013) (*quoting Soppet*, 679 F.3d 638-39 (7th Cir. 2012)) ("[A]n automated call to a cell phone adds expense to annoyance … [The recipient] is out of pocket the cost of airtime minutes and has had to listen to a lot of useless voicemail."); *Lee v. Credit Mgmt., LP*, 846 F.Supp.2d 716, 729 (S.D. TX 2012) (Plaintiff's statement that he pays a third-party provider for cellular phone services is sufficient to show that an individual was charged for the calls.); *Fini v. Dish Network L.L.C*., 955 F.Supp.2d 1288, 1297 (M.D. FL 2013) (same); *Diugosh v. Directbuy, Inc. of San Antonio*, No. 13-cv-722 (W.D. TX Oct. 24, 2013) (same).

[5] *See e.g.,* Apple Inc., *Battery Servicing and Recycling*, http://www.apple.com/batteries/service-and-recycling/ ("All rechargeable batteries have a limited lifespan … Your own battery's lifespan will vary depending on how you use your device …").

[6] *See Mey v. Got Warranty, supra fn. 2*, 193 F. Supp. 3d at 645-47 (Intangible harms include "intrusion upon and occupation of the plaintiff's cell phone. … [and] intrusion upon another person's computerized electronic equipment … " Tangible harms, including the cost of electricity, "[w]hile certainly small, [are] real, and the cumulative effect could be consequential.").

Electronically Filed - Jackson - Kansas City - June 02, 2017 - 08:11 PM

from an unknown number to his personal cellular telephone.

54.     One of these text messages represented that Plaintiff had been "invited to join the Gather app[,]" and further represented that "2 of your friends want to hang :)" The message advised Plaintiff to "[c]heck it out!", urging him to follow the embedded link to "http://gthr.me/dl".

55.     The other text message contained a GIF image, depicting a cat high-fiving a person passing the cat. (See the images below extracted from the GIF).



56.     On June 23, 2016, Plaintiff registered his wireless number ending in "6636" with the Mo. DNC registry, and received confirmation that his Mo. DNC registration would be effective as of Oct. 1, 2016.

57.     On July 7, 2016, Plaintiff registered his wireless number ending in "6636" with the national DNC registry, and received confirmation that his DNC registration would be effective as of August 7, 2016.

58.     Since the effective date of Plaintiff's registration on the Mo. and national DNC registries in 2016, GatherApp sent at least two text messages to Plaintiff Williams in 2017.

59.     Plaintiff, having been sent unsolicited autodialed text messages from GatherApp, files this Petition on his own behalf and all others similarly situated, seeking relief from GatherApp's illegal telemarketing practices.

<u>CLASS ACTION ALLEGATIONS</u>

60.     Plaintiff restates and incorporates by reference all paragraphs of this Petition, including all subparagraphs thereof.

61.     As to Count I for violation of the TPCA (the "TCPA Class"), Plaintiff brings this action on his own behalf and on behalf of the putative class defined as:

> All persons and entities within the United States to whom GatherApp (or a third party on GatherApp's behalf) sent a text message containing a link to download the Gather mobile application, and/or containing a GIF Image or similar media, within the four years predating the filing of the Petition.

62.     As to Count II for violation of the TPCA (the "DNC Class"), Plaintiff brings this action on behalf of himself and on behalf of a putative class defined as:

> All persons within the United States whose phone numbers were registered on the national do-not-call registry and to whom, within the four years predating the filing of the Petition, GatherApp (or a third party on GatherApp's behalf) sent more than one text

message within any twelve-month period, containing a link to download the Gather mobile application, and/or containing a GIF Image or similar media.

63. As to Count III for violation of the MMPA (the "MMPA Class"), Plaintiff brings this action on behalf of himself and on behalf of a putative class defined as:

> All Missouri residents whose phone numbers were registered on the national do-not-call registry or the Mo. do-not-call registry and to whom, within the five years predating the filing of the Petition, GatherApp (or a third party on GatherApp's behalf) sent more than one text message within any twelve-month period, containing a link to download the Gather mobile application, and/or containing a GIF Image or similar media.

64. Excluded from the above-defined classes are GatherApp, any entity in which GatherApp has a controlling interest, GatherApp's officers, directors, and employees, GatherApp's counsel, any persons or entities who have previously settled a TCPA claim with GatherApp, the Court and Court personnel, and Plaintiff' counsel.

65. **Numerosity – Mo. R. Civ. P. 52.08(a)(1); Fed. R. Civ. P. 23(a)(1).** Plaintiff does not know how many members are in the putative class, but believes them to be in the tens of thousands, if not more. On information and belief, the number of class members is so numerous that their individual joinder is impracticable. The precise number of putative class members and their phone numbers can be obtained from information and records in the possession and control of GatherApp or third parties acting on GatherApp's behalf.

66. **Existence and Predominance of Common Questions of Law and Fact – Mo. R. Civ. P. 52.08(a)(2) & 52.08(b)(3); Fed. R. Civ. P. 23(a)(2) & 23(b)(3).** Common questions of law or fact exist as to all members within the putative class and predominate over any questions solely affecting any individual member. The predominating common legal and factual questions, each of which may also be certified under Mo. R. Civ. P. 52.08(c)(4) or Fed. R. Civ.

P. 23(c)(4), include the following:

(a)  Whether GatherApp used an automatic telephone dialing system to send text messages;

(b)  Whether GatherApp text messages are advertisements;

(c)  Whether GatherApp text messages constitute telemarketing;

(d)  Whether GatherApp's text messages were sent willfully or knowingly;

(e)  Whether GatherApp's text messages were made for an emergency purpose;

(f)  Whether GatherApp honors the national DNC list;

(g)  Whether GatherApp honors the Mo. DNC list;

(h)  Whether GatherApp (i) established and implemented written procedures to comply with the national do-not-call rules; (ii) trained its personnel in procedures established pursuant to the national do-not-call rules; (iii) maintained a list of telephone numbers GatherApp may not contact; (iv) employed a version of the national do-not-call registry obtained from the administrator of the registry no more than 30 days prior to the date any call or text is made, and (v) maintained records documenting this process;

(i)  Whether Gather established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the MMPA; and

(j)  Whether, and to what extent, class members are entitled to equitable relief, including declaratory relief, a preliminary injunction, and/or permanent injunction.

67. **Typicality – Mo. R. Civ. P. 52.08(a)(3); Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of the putative class he seeks to represent. The factual and legal bases of GatherApp's liability to Plaintiff is the same for all putative class members: (i) GatherApp violated the TCPA by using an automatic telephone dialing system to send text messages without obtaining prior express written consent in writing or otherwise; (ii) GatherApp violated the TCPA by sending multiple promotional text messages during a twelve-month period to persons on the national DNC list; and (iii) GatherApp violated the MMPA by sending multiple promotional text messages during a twelve-month period to persons on the national DNC list or the Mo. DNC list.

68. **Adequacy of Representation – Mo. R. Civ. P. 52.08(a)(4); Fed. R. Civ. P. 23(a)(4).** Plaintiff will fairly and adequately protect the interests of the putative class members. Plaintiff has no interests that might conflict with the interests of the putative class members. Plaintiff will pursue the claims vigorously, and Plaintiff has retained counsel competent and experienced in TCPA class actions and complex litigation.

69. **Superiority – Mo. R. Civ. P. 52.08(b)(3); Fed. R. Civ. P. 23(b)(3).** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual class members is small compared with the burden and expense that would be entailed by individual litigation of their claims against GatherApp. It would thus be virtually impossible for class members, on an individual basis, to obtain effective redress for the wrongs done them. Furthermore, even if class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all

parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

**C<small>OUNT</small> I**
**V<small>IOLATIONS OF THE</small> TCPA, 47 U.S.C. § 227(b)(1)(A)(iii)**
**(P<small>LAINTIFF AND THE</small> TCPA C<small>LASS VS.</small> D<small>EFENDANT</small>)**

70.     Plaintiff restates and incorporates by reference all paragraphs of this Petition, including all subparagraphs thereof.

71.     Within the four years predating the filing of this Petition, GatherApp employed an ATDS to send non-emergency text messages to the cellular or wireless telephones of Plaintiff and the TCPA Class.

72.     GatherApp did not obtain prior express consent in writing, or otherwise, to send autodialed text message calls to the cellular or wireless telephones of Plaintiff or the TCPA Class.

73.     As a result of GatherApp's conduct and pursuant to Section 227(b)(3) of the TCPA, Plaintiff and the TCPA Class were harmed and are entitled to a minimum of $500.00 in damages for each violation.

74.     Plaintiff and the TCPA Class are also entitled to an injunction against future text message calls. 47 U.S.C. § 227(b)(3).

75.     GatherApp's text messages were willful and knowing, in that GatherApp knew it was employing equipment that would send unsolicited promotional text messages to the cellular and wireless telephone numbers stored in its users' contact lists.

76.     "Willful … means that the violator knew that he was doing the act in question. …

A violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance." *In re Dynasty Mtg., L.L.C.*, 22 FCC Rcd. 9453, 9470 n. 86 (May 14, 2007) (citations omitted).

77.     Accordingly, the Court should treble the amount of statutory damages available to Plaintiff and the TCPA Class and award $1,500 for each violation of the TCPA.

WHEREFORE, Plaintiff, individually and on behalf the TCPA Class, seeks $1,500 per violation of the TCPA; a declaration that GatherApp's methods, acts and practices violate the TCPA, 47 U.S.C. §§ 227, *et seq.*; an injunction prohibiting GatherApp from continuing to engage in such unlawful methods, acts, and practices; and attorneys' fees and costs.

## COUNT II
### VIOLATIONS OF THE TCPA, 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2)
### (PLAINTIFF AND THE DNC CLASS VS. DEFENDANT GATHERAPP)

78.     Plaintiff restates and incorporates by reference all paragraphs of this Petition, including all subparagraphs thereof.

79.     GatherApp's text messages were made for a commercial purpose, in that they contain GIF Images or similar media depicting humorous or enjoyable activities designed to portray the GatherApp social network as a fun place "to hang" with friends, they advertised the commercial availability of its products and services by encouraging consumers to visit GatherApp's website, to review information regarding the features of GatherApp's products and services, and ultimately to purchase GatherApp's products and services.

80.     Within the four years predating the filing of this Petition, GatherApp made more than one advertising and/or telemarketing text message call within a twelve-month period to Plaintiff and the DNC Class after their telephone numbers had been registered on the national DNC registry for more than 30 days.

81.     These advertising and/or telemarketing text message calls were made even though GatherApp did not obtain prior express consent in writing, or otherwise, to send such text messages to Plaintiff or the DNC Class.

82.     As a result of GatherApp's conduct and pursuant to Section 227(c)(5) of the TCPA, Plaintiff and the DNC Class were harmed and are entitled to a minimum of $500.00 in damages for each violation.

83.     Plaintiff and the DNC Class are also entitled to an injunction against future calls. 47 U.S.C. § 227(c)(5).

84.     On information and belief, GatherApp failed to (i) establish and implement written procedures to comply with the national do-not-call rules; (ii) train its personnel in procedures established pursuant to the national do-not-call rules; (iii) maintain a list of telephone numbers GatherApp may not contact; (iv) employ a version of the national do-not-call registry obtained from the administrator of the registry no more than 30 days prior to the date any call is made, and (v) maintain records documenting this process.

85.     On information and belief, GatherApp failed to honor the national DNC registry, failed to maintain an internal DNC list and/or failed to place the phone numbers of Plaintiff and the DNC Class on its internal DNC list upon request, failed to provide "an interactive opt-out mechanism" by which Plaintiff and the DNC Class could opt out of future calls, and failed to maintain an "automated, interactive voice- and/or key press-activated opt-out mechanism" by which Plaintiff and the DNC Class could call a separate toll-free number and add their numbers to GatherApp's internal DNC list.

86.     GatherApp's text messages were willful and knowing, in that GatherApp knew it was employing equipment that would send unsolicited promotional text messages to the cellular

Electronically Filed - Jackson - Kansas City - June 02, 2017 - 08:11 PM

and wireless telephone numbers stored in its users' contact lists even if such persons had registered their numbers on the national DNC list.

87. "Willful … means that the violator knew that he was doing the act in question. … A violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance." *In re Dynasty Mtg., L.L.C.*, 22 FCC Rcd. 9453, 9470 n. 86 (May 14, 2007) (citations omitted).

88. Accordingly, the Court should treble the amount of statutory damages available to Plaintiff and the DNC Class and award $1,500 for each violation of the TCPA.

WHEREFORE, Plaintiff, individually and on behalf the DNC Class, seeks $1,500 per violation of the TCPA; a declaration that GatherApp's methods, acts and practices violate the TCPA, 47 U.S.C. §§ 227, *et seq.*; an injunction prohibiting GatherApp from continuing to engage in such unlawful methods, acts, and practices; and attorneys' fees and costs.

## COUNT III
### VIOLATIONS OF THE MMPA, RSMO §§ 407.1095, *et seq.*
### (PLAINTIFF AND THE MMPA CLASS VS. DEFENDANT GATHERAPP)

89. Plaintiff restates and incorporates by reference all paragraphs of this Petition, including all subparagraphs thereof.

90. GatherApp's text messages were telephone solicitations, in that they contain GIF Images or similar media depicting humorous or enjoyable activities designed to portray the GatherApp social network as a fun place "to hang" with friends, they advertised the commercial availability of its products and services by encouraging consumers to visit GatherApp's website, to review information regarding the features of GatherApp's products and services, and ultimately to purchase GatherApp's products and services.

91. Within the two years predating the filing of this Petition, GatherApp made more

than two telephone solicitations within any twelve-month period to Plaintiff and the MMPA Class after their telephone numbers had been registered on the national DNC registry for more than 30 days, or after their telephone numbers had been registered on the Mo. DNC registry for more than 90 days.

92. These telephone solicitations were made even though GatherApp did not obtain prior express invitation or permission from Plaintiff or the MMPA Class to send such telephone solicitations.

93. As a result of GatherApp's conduct and pursuant to RSMo § 407.1104.3(2), Plaintiff and the MMPA Class were harmed and are entitled to up to $5,000 in damages for each knowing violation.

94. Plaintiff and the MMPA Class are also entitled to an injunction against future calls. RSMo § 407.1104.3(1).

95. On information and belief, GatherApp failed to establish and implement, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the MMPA.

96. On information and belief, GatherApp failed to honor the national DNC registry, failed to maintain an internal DNC list, failed to provide "an interactive opt-out mechanism" by which persons could opt out of future telephone solicitations, and failed to honor the Mo. DNC registry.

97. GatherApp's text messages were willful and knowing, in that GatherApp knew it was employing equipment that would send unsolicited promotional text messages to the cellular and wireless telephone numbers stored in its users' contact lists even if such persons had registered their numbers on the national DNC list or the Mo. DNC registry.

Electronically Filed - Jackson - Kansas City - June 02, 2017 - 08:11 PM

98.     "Willful … means that the violator knew that he was doing the act in question. … A violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance." *In re Dynasty Mtg., L.L.C.*, 22 FCC Rcd. 9453, 9470 n. 86 (May 14, 2007) (citations omitted).

99.     Accordingly, the Court should award Plaintiff and the MMPA Class $5,000 in statutory damages for each violation of the MMPA.

WHEREFORE, Plaintiff, individually and on behalf the MMPA Class, seeks $5,000 per violation of the MMPA; a declaration that GatherApp's methods, acts and practices violate the MMPA, RSMo §§ 407.1095, *et seq*.; an injunction prohibiting GatherApp from continuing to engage in such unlawful methods, acts, and practices; and attorneys' fees and costs.

### JURY DEMAND

Plaintiff demands a trial by jury of all claims that are so triable.

Dated: June 2, 2017

Respectfully submitted,

**BILL KENNEY LAW FIRM, LLC**

  /s/ Bill Kenney
William C. Kenney          MO # 63001
1101 Walnut Street, Suite 102
Kansas City, MO 64106
Telephone: (816) 842-2455
Facsimile: (816) 474-8899
Email: *bkenney@billkenneylaw.com*

**WOOD LAW FIRM, LLC**
Ari N. Rodopoulos MO #58777
*ari@woodlaw.com*
Noah K. Wood MO #51249
*noah@woodlaw.com*
1100 Main Street, Suite 1800
Kansas City, MO 64105-5171
T: (816) 256-3582
F: (816) 337-4243

*Attorneys for Plaintiff and all others similarly situated*